# UNITED STATES DISTRICTCOURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GEORGIA POULOS, individually and as
Co-Trustee of the Georgia Poulos Inter Vivos
Trust, NICK POULOS, as Co-Trustee of the
Georgia Poulos Inter Vivos Trust Dated
May 29, 1996, and Anastasios Poulos,
 Co-Trustee of the Georgia Poulos Inter  Vivos Trust
and Beneficiary, Antonios  Poulos, Beneficiary,
and Basilios Poulos, Beneficiary of the
Georgia Poulos Inter Vivos  Trust Agreement
Dated May 29, 1996,

    Plaintiffs,                            Case No:

v.

REGIONS BANK INCORPORATED,
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,
ROLAND D. WALLER, ESQ,
WALLER & MITCHELL, P.A.,
JOHN TAYLOR, ESQ,
MATTHEW ELLROD, ESQ,
GEORGE MALACOS, Individually and
MALACOS INC, a Florida Corporation,
MICHAEL MALACOS, Individually,
VINCE CHRISTIAN, Individually,
LYNN GILBERT, Individually,

    Defendant.

_____ /

## COMPLAINT

      COMES NOW plaintiffs, Georgia Poulos, individually and as Trustee of the Georgia

Poulos Inter Vivos Trust Agreement, Co-Trustee Nick Poulos and the Trust Beneficiaries

1

Anastasios, Antonios and Basilios Poulos ("hereinafter plaintiff" or "Poulos" or "Trustee") by  and through the undersigned counsel and files this Complaint against defendants.

1.    This case involves a conspiracy to file frivolous lawsuits and to create and record fraudulent title documents and to sell property stolen from the Georgia Poulos Trust and to obtain illegal mortgage loan proceeds. The defendants devised and implemented a scheme to defraud mortgage lenders and property owners of money and property, including Regions Bank and the Georgia Poulos and the Nick Poulos Revocable Living Trusts. The Defendants sought to obtain money and property by means of false and fraudulent pretenses and representations. Waller's scheme involved using straw buyers to apply for mortgage loans for residential real estate transactions that may or may not have  involved the actual transfer of ownership of the property.  Waller and others used the mortgage  loan proceeds from these transactions to enrich themselves and to perpetuate the scheme.

2.    This is a mortgage fraud case involving many players and a large number of documents. But it is, at its core, a fairly simple case: the defendants and their coconspirators engaged in lies and omissions designed to induce lenders such as Regions Bank to fund mortgages for properties located in Pasco County, Florida. Absent the lies and omissions, the lenders would not have funded the mortgages. And, absent the mortgages, the defendants and their coconspirators would have been unable to unjustly enrich themselves. Primarily, this is a mortgage fraud / identity theft case in which the defendants and their co-schemers  fraudulently obtained mortgage loan proceeds by arranging fraudulent real estate transactions in  which individuals using stolen and fictitious identities presented themselves at staged real estate closings as buyers, sellers, and/or their representatives for the purpose of obtaining the mortgage

loan proceeds that were to be "paid" to the purported sellers. The defendants and their co-schemers arranged these fraudulent real estate transactions without the actual homeowners' knowledge or consent. Moreover, the actual purported purchasers were unaware that their identities were being used to purchase the subject properties. Nevertheless, lenders provided mortgage financing for the transactions, which the co-schemers obtained as sellers' proceeds.

## PARTIES

3.     Plaintiff GEORGIA POULOS is an individual residing in Pasco County, Florida. Mrs. Poulos is the active Trustee of the Georgia Poulos Inter Vivos Trust Agreement. At all times material to  this cause of action, Georgia Poulos was and is a citizen of the State of Florida.

4.     Plaintiff NICK POULOS is an individual residing in Pasco County, Florida. Mr. Poulos is the husband of Georgia Poulos and co-trustee of the  Georgia Poulos Inter Vivos Trust Agreement. At  all times material to this cause of action, Nick Poulos was and is a citizen of the State of Florida.

5.     Plaintiffs, ANASTASIOS POULOS, ANTONIOS POULOS and BASILIOS POULOS are the sons of Nick and Georgia Poulos and the Beneficiaries of the Georgia Poulos Inter Vivos Trust Agreement. Anastasios, Antonios and Basilios Poulos are also co-trustees of the Georgia Poulos Inter Vivos Trust in that order. Anastasios Poulos is a Co-Trustee of the Georgia Poulos Inter Vivos Trust Agreement Dated May 29, 1996 and Co-Trustee and

beneficiary of the Nick Poulos Irrevocable Trust Agreement dated May 29, 1996. At all times material to this cause of action, ANASTASIOS POULOS, ANTONIOS POULOS, and BASILIOS POULOS were citizens of the State of Florida and remain so today.

5.      AA&B, INC is a Florida Corporation incorporated by Nick and Georgia Poulos in November of 1980. In 1996, the Plaintiffs transferred the Hudson Beach Estates Unit 4 property from the corporation into the Georgia Poulos Inter Vivos Trust Agreement Dated May 29, 1996. [Please See Plaintiffs Exhibit ("A")].

6.      Defendant Regions Bank ("Regions") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC"). Defendant Regions is a foreign corporation organized under the laws of the  State of Alabama with its principal place of business located in Birmingham, Jefferson County, Alabama.

7.      VINCE CHRISTIAN (hereinafter referred to as "Christian") is an individual who resides in Ocala, Florida and is an agent of Regions Bank. More specifically, in 2013, Mr. Christian was a Vice-President and a Branch Manager at a Regions Branch located in Ocala, Florida. Mr. Christian served as a loan officer that processed loans for Regions Bank.

8.      Defendant – MALACOS INC. – is a Florida Corporation. The address of Defendant's principal place of business is 6330 Clark Street, Hudson Beach, FL 34667 and is

located in Pasco County.

9.      Defendant – GEORGE MALACOS (hereinafter referred to as "Mr. Malacos" and or "Malacos") – is the President of MALACOS INC. and is an individual who resides in Pasco County. Any reference to Mr. Malacos in the Complaint set forth herein shall be construed as an act on behalf of MALACOS INC. At various times relevant to Plaintiffs complaint, George Malacos, a/k/a "George Michael Malacos," a/k/a "Patrick Sullivan," a/k/a "Stephen Matis," a/k/a "Rick Leone," the defendant, coordinated the use of the various straw identities to purportedly buy property using commercial mortgage loans. On occasion, to further the scheme to defraud, Malacos provided his contact information to mortgage brokers and mortgage lenders to provide verification of the loan application information of the straw identity being used as the buyer for a particular property. Malacos knowingly provided false information on mortgage loan applications and filed and recorded false and fraudulent documents with the Pasco County Clerk's Office. In addition, Malacos knowingly executed a false and fraudulent trust deed and trustee affidavit and knowingly signed a false and fraudulent HUD-1 Settlement Statement [Plaintiff's Exhibit ("A")].

10.     Defendant – MATTHEW ELLROD ESQ. (hereinafter referred to as "Mr. Ellrod" and or "Ellrod") – is an individual who resides in Pasco County. Further, Mr. Ellrod is a licensed Florida attorney and practices law primarily in Pasco County at the Law Offices of  Matthew Ellrod, P.A.  Mr. Ellrod posed as a "straw seller" or "nominee seller" of the Poulos Trust Property known as Hudson Beach Estates Unit 4 and knowingly verified information to be true and signed a false and fraudulent HUD-1 Settlement Statement as the seller of property he

did not own.

11.     Defendant – ROLAND D. WALLER ESQ. (hereinafter referred to as "Mr. Waller" and or "Waller") – is a citizen of the State of Florida and resides in Pasco County. During all times relevant to the claims alleged, Waller used numerous alias identities, including "Ronald D. Waller," "Ronald C. Farchione," "Ricky Leone," and it is Plaintiff's belief based on records reviewed that Mr. Waller's spouse has also assumed numerous identities, including "Sharon L. Farchione". Further, Mr. Waller is a licensed Florida attorney and practices law primarily in Pasco County at the Law Firm of Waller & Mitchell, P.A. Also, Mr. Waller acts as an agent of OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY and provides title insurance services as the former's agent. Lastly, Mr. Waller was a licensed mortgage broker in the State of Florida from July 10, 1992 to August 31, 2003. The Defendant ROLAND WALLER was also a real estate investor who used multiple Straw Corporations and Straw Buyers to purchase and sell some of the properties. Waller acted as an attorney representing Straw Buyers and Straw Corporations in fraudulent real estate transactions with respect to the Poulos properties referenced in Plaintiffs complaint.

a.     Defendant Roland Waller knowingly executed and attempted to execute the aforesaid scheme and artifice to defraud lenders and to obtain money and funds, under the custody and control of Regions Bank, by means of false and fraudulent pretenses in that Defendant Roland Waller, aided and abetted by co-schemers Matthew Ellrod and George Malacos, caused Regions and other lenders to extend a $701,250.00 loan to Malacos, under the pretense that the loan was a commercial loan secured by commercial income producing properties in Pasco County, Florida.

b.      Upon information and belief Roland Waller through Waller & Mitchell, P.A., and with the help of employees and agents of Waller & Mitchell, P.A., and as an agent of Old Republic National Title Insurance Company prepared and caused to be prepared, materially false and fraudulent title commitments certifying that certain nominees in the real estate transactions owned the real properties involved, when in truth, these nominees did not own the properties at the time. These title commitments were submitted to banks and other lending institutions to induce them to make mortgage loans to George Malacos and or a Malacos related corporate nominee and or to a bogus fictitious Malacos Family trust. In addition, title commitments were issued to George Malacos d/b/a INN ON THE GULF.

c.      Defendant Waller prepared deeds, mortgages and notes for Malacos in his false identities and then those deeds, mortgages and notes were recorded in the official land records of Pasco County, Florida as well as in the records of Hernando and Bay Counties, which concealed Malacos's ownership and control of properties.

d.      Upon information and belief, Mr. Waller was also an active participant in the Enterprise as a seller and buyer in nominee and flip transactions. Waller prepared deeds, mortgages and notes for Malacos in his false identities and then those deeds, mortgages and notes were recorded in the official land records of Pasco County, Florida as well as in the records of Hernando and Bay Counties, which concealed Malacos's ownership and control of properties.

e.      Waller then entered into land purchase and sale contracts for properties, using his false identities.  Waller and or his nominees obtained loans from financial institutions to finance purchases of the properties.

      f.     Waller participated as buyer, seller, and or borrower through use of his false identities in property settlements.

12.    Defendant – OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY (hereinafter referred to as "Old Republic" or "ORNTIC") – Old Republic is a Minnesota corporation with its principal place of business located at 400 Second Avenue South. Minneapolis, MN 55401-2499. Old Republic is one of the largest title insurance groups in the United States. Old Republic operates through a national network of offices, affiliates, authorized agents, and attorneys. Old Republic's local office has an address of 1410 N. West Shore Blvd #800, Tampa, FL 33607 and is located in Hillsborough County.

13.    Defendant – JOHN TAYLOR ESQ. (hereinafter referred to as "Mr. Taylor" and or "Taylor") – is an individual who resides in Orlando, Florida. The Defendant John Taylor was also a purported real estate investor who used multiple Straw Corporations and Straw Buyers to purchase and sell some of the properties. Taylor acted as an attorney representing Straw Buyers and Straw Corporations in fraudulent real estate transactions with respect to the Poulos properties referenced in Plaintiffs complaint. Furthermore, Mr. Taylor is a licensed Florida attorney and practices law at the Law Firm of Anthony, Fasset, & Taylor, P.A. Taylor is a licensed loan originator in the State of Florida and formerly licensed mortgage broker in the State of Florida.

      (a)     John Taylor, Esq. (hereinafter "Taylor" or "Bank Defendants" or "Regions Defendants") serves as the trustee under the fictitious Mortgage and Deed of Trusts issued to Regions Bank. Mr. Taylor served as a loan originator for various lenders

including Regions Bank and created and recorded many of the fraudulent mortgage loan documents used by the Enterprise, including the fraudulent UCC Financing Statements, which were recorded with the Florida Department of Secured Transactions Registry.

     (b)     Upon information and belief, Taylor facilitated the submission to Regions Bank of many of the fake and fraudulent loan documents used by the Enterprise.

14.     Defendant – ROBIN SWELLER (hereinafter referred to as "Ms. Sweller" and or "Sweller") is an individual who resides in Pasco County. Furthermore, Ms. Sweller was an agent of the Law Firm of Waller & Mitchell, P.A. And, Ms. Sweller is a former licensed mortgage broker in the State of Florida.

     (a)     Sweller prepared deeds, mortgages and notes for Malacos in his false identities and then those deeds, mortgages and notes were recorded in the official land records of Pasco County, Florida as well as in the records of Hernando, Citrus and Bay Counties, which concealed Malacos's ownership and control of properties.

     (b)     Sweller conducted property settlements in which Malacos, Waller as well as other straw buyers participated as buyers, sellers and or borrowers through the use of false identities which Sweller concealed from the lenders.

     (c)     Sweller failed to conduct the settlement transactions as described on the settlement statements;

     (d)     Sweller paid over the seller's proceeds as Waller directed.

15.     Defendant – URBAN REALTY SOLUTIONS (hereinafter referred to as "URS") – is a foreign corporation that provides real estate appraisals and serves commercial

real estate markets of the southeastern United States and the Caribbean. H. LINWOOD GILBERT JR. (hereinafter referred to as "Mr. Gilbert") is an individual who resides in Hillsborough County, Florida. Mr. Gilbert is a real estate appraiser who is licensed in the State of Florida. Mr. Gilbert is an agent of URS.

16.    MICHAEL MALACOS

17.    JONI BUSCEMA -   is an individual who resided in Pasco County, Florida and is a licensed Notary Public of the State of Florida. Mrs. Buscema was the former legal assistant to George Klimis, Esq. Mr. Klimis was Georgia and Nick Poulos' Estates Planning and Transactional Attorney and drafted all of the Poulos Family's Trust and Estates documents. Sadly, Mr. Klimis past in 2010. As his legal assistant Mrs. Buscema had intimate knowledge of the Poulos Trust Documents as demonstrated by the many notations and hand written notes executed by Mrs. Buscema contained in the original records of Georgia Poulos. Mrs. Buscema served as a witness to many of the Poulos Trust documents and Trust Deeds. In furtherance of the defendants scheme to defraud Mrs. Buscema executed a false and fraudulent Trust Deed and Trustee Affidavit for Defendant George Malacos in the same style and fashion as the Poulos Trust Deeds, which were executed by Buscema's former boss and Poulos Trust Attorney. *[Please See Fictitious Trust Deed, Affidavit and Buscema Documents Marked as Plaintiffs Exhibit ("B")].*

18.    POULOS is informed and believes and on that basis alleges that in addition to the individuals identified above, other unnamed individuals within the Malacos and Waller organizations participated in and provided assistance in furtherance of the fraudulent schemes described in detail herein.

19.     POLOS is informed and believes and on that basis alleges that at all times relevant, Defendant OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY ("Old Republic") was a Minnesota corporation with its principal place of business in the county of Los Angeles, California, and engaged in the business of preparing preliminary title reports and procuring title insurance for use in real estate transactions.

20.     POULOS is informed and believes and on that basis alleges that Defendant ROLAND WALLER ("Waller") was associated with Old Republic in his capacity as an employee, shareholder, partner, principal or officer and residing in Pasco County, Florida.

**Relevant Background of Non-Parties**

21.     Armand and Adeline Milazzo - Armand Milazzo and his wife Adeline Milazzo were very close friends with Plaintiffs Nick and Georgia Poulos and served as surrogate grandparents to their three sons, whose biological Grandparents lived in Greece. In addition to their friendship, Mr. and Mrs. Milazzo purchased a small marina located directly behind the Poulos Motel and Restaurant in 1983. The Milazzo's shortly thereafter converted a portion of the marina into a small diner, serving breakfast and lunch.  In 1986, Pasco County, as part of a beach revitalization project to turn Hudson Beach into a legitimate County Recreational Park, began Eminent Domain proceedings against Armand and Adeline Milazzo's Marina and Restaurant. In 1988, the newly renovated Hudson Beach opened to the public as the Strickland Memorial Park and where the Milazzo's marina once stood lays the Strickland Park Boat Trailer Parking Lot reserved for boaters using the County's boat ramp which lies adjacent to the property.

a.      the Milazzo's property description was very similar to the Plaintiffs Hudson Beach Estates Unit 4 property description. The full legal description to the Milazzo's Marina property was Hudson Beach Estates Unit 4, Lot 18, Block C, Plat Book 7, Pgs. 31 and 32.

## Jurisdiction and Venue

22.      The Court has subject matter jurisdiction over the claims alleged below under 28 U.S.C. §1332, since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

23.      The Court also has subject matter jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. §1331 because those claims arise under the laws of the United States, 18 U.S.C. §1961 *et seq.*

24.      The Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. §1367, because the federal and non-federal claims arise from a common nucleus of operative facts.

25.      Venue is proper in this Judicial District under 28 U.S.C. §1391(b) because all Defendants reside and/or do business in the State of Florida, and because the claims for relief arise from acts, events, and omissions that occurred in this District or a substantial part of property that is the subject of the action is situated in this District. The properties at issue in this Complaint (which are described more fully herein) are situated in Pasco County, Florida.

## BACKGROUND

26.      Georgia Poulos is married to Nick Poulos, and they had three children: Anastasios Poulos, Antonios Poulos and Basilios Poulos.

27.     On March 29, 1996, Georgia Poulos ("settlor") executed a revocable living trust agreement entitled the Georgia Poulos Inter Vivos Trust Agreement (hereinafter referred to as the "Poulos Trust") at the Law Offices of George Klimis, P.A. her attorney. The trust appointed her husband, Nick Poulos, as Co-Trustee along with her oldest son, Anastasios Poulos, who was also a beneficiary along with Nick and Georgia Poulos's twin sons, Antonios Poulos and Basilios Poulos. Under the terms of the Trust Agreement, upon the death of the first spouse/settlor, the surviving spouse/settlor continues to serve as a Co-Trustee of such trust.

28.     Georgia Poulos funded the trust with commercial property located at located at 6330 Clark Street, Hudson, FL 34667 (hereinafter referred to as the "Property") which constitutes beachfront commercial property. The Property has two floors. The first floor consists of a restaurant, bar, snack area, bathroom facilities, kitchen, and eighteen motel rooms. The second floor consists of similar items and also includes a patio-deck that overlooks the Gulf of Mexico. The property has the following legal description:

a.      HUDSON BEACH ESTATES  UNIT 4,  Lot 16,  BL  C,  Plat Book 7, Pages: 31 & 32.

b.      Short Form Legal Description is: HUDSON BEACH ESTATES UNIT 4

c.      Pleae See Pasco County Property Appraiser's Records obtained via public records request. [Pl's Exhibit ("A")].

29.     Nick and Georgia Poulos purchased the Hudson Beach Estates Unit 4 Property in 1980. Plaintiffs purchased the property from Ruth Lynch and The Amber Lantern Corporation, a Florida Corporation, started by her and her husband James Lynch. The Lynch's

purchased the property in 1972 and constructed the original restaurant and motel. However, shortly after completing construction and opening for business, Mr. Lynch passed and Ruth Lynch placed what was then called the "Red Marker Inn" up for sale. In 1980, Plaintiffs Nick and Georgia Poulos packed up their three sons and decided to move to Florida after an unsuccessful attempt at the restaurant business in Houston, Texas. Within a few months of arriving in Florida, Nick Poulos saw Ruth Lynch's ad listing the Red Marker Inn for sale and on December 11, 1980, Plaintiffs closed on the property.

30.     Nick and Georgia Poulos     – as well as the couple's three children – operated a restaurant and motel on the Property.  Plaintiff's named the motel and restaurant the "INN ON THE GULF," and subsequently  registered that name with the Florida Department of State. [Please See Florida Department of  State Trade Name Filing attached as Exhibit ("B")].

31.     On May 26, 1996, Nick and Georgia Poulos as Grantors/Settlors transferred the Property to the Georgia Poulos Revocable Inter-Vivos Trust Agreement via Trust Deed, which was recorded in the Pasco County Official Records. Grantors selected their three sons as the Trust's beneficiaries. [A copy of the Poulos Trust is attached hereto as Exhibit ("A")].

32.      The Georgia Poulos Inter-Vivos Trust (the "Trust") specifically prohibited anyone  other than Georgia Poulos herself from amending the trust.

**A.       Only Georgia Poulos Herself Had the Authority to Amend the Trust**

33.      Pursuant to Article II of the Georgia Poulos Irrevocable Trust Agreement,

titled  "Article II - Right to Amend or Revoke," specifically states that "The Grantor reserves

the right  to amend, modify or revoke this Agreement, in whole or in part, at any time or times,

by written  notice delivered to the Trustee, and any amendment, modification or revocation shall

be effective  immediately upon delivery to the Trustee ..." (Attached as Plaintiff's Exhibit "A").


34.    Additionally, in Georgia Poulos's Durable Power of Attorney which was

executed  contemporaneously with her Inter- Vivos Trust Agreement, she appointed her

husband Nick  Poulos as her attorney in fact to manage her affairs, granting him certain powers

as indicated in  the agreement, however, limitations were placed on his powers as outlined in

her durable power  of attorney. [Please See Durable Power of Attorney Attached as Exhibit "C"].


35.    Georgia Poulos's husband also executed an identical Trust and DPOA as Mrs.

Poulos  which was  utilized  to hold  different  pieces  of the  family's real estate. Georgia and

Nick  Poulos's attorney  in  fact  was  not  given  the  power  to  create,  amend,  modify,  or

revoke  any  documents or other disposition effective at his or her death or transfer assets to an

existing trust created  by her or  him unless  expressly  authorized  by the  power of attorney;

or  exercise  powers  or  authority  granted  to her or  him as  trustee or  as  court-appointed

fiduciary. [Please See Durable  Power of Attorney of Nick Poulos Attached as Exhibit "D"].


36.    Consequently,  neither  Georgia  Poulos's  attorney-in-fact,  nor  a  court-

appointed  person  or  court-appointed  Special  Master  was  empowered  by  the  provisions  of

the  Trust  to  amend  the Trust or to withdraw real or personal property from the Trust.

46.    The Trust  specifically provides  that only  the grantor  may  utilize any  of the

provisions of the Trust (i.e., amend the Trust), and not only are conservators, masters or guardians not allowed to exercise such rights, the Trust provides that no "other person other than the grantor" may exercise such rights. That is, none of Georgia Poulos's agents, including those falsely and fraudulently claiming to be agents of the trust, such as, Matthew Ellrod and George Malacos have the power to amend the Poulos Trusts because such authority was reserved strictly to Georgia Poulos and to Nick Poulos. Accordingly, any trust amendments executed by someone other than Georgia Poulos and/or Nick Poulos is invalid, ineffective and illegal and this restriction could not have been overcome by a power of attorney.

37.     If Georgia Poulos or Nick Poulos were determined to be incapacitated and unable to serve as trustee pursuant to the their respective trusts., Anastasios Poulos, Antonios Poulos and Basilios Poulos, in succession immediately succeeded as Co-Trustees of their parents Trusts.

## GENERAL ALLEGATIONS

38.     Prior to August 7, 2013, George Malacos held an expired leasehold interest in Plaintiff's property. On March 11, 2013, Malacos's fifteen (15) year leasehold interest in the Property expired. Malacos failed to exercise his renewal option prior to the expiration of the lease. However, two years prior to the expiration of the leasehold interest Malacos exercised its option to purchase the property for the second time in five years. [Please see Lease Agreement and Asset Purchase Agreement attached as Exhibit ("E")].

39.     Malacos's first attempt at exercising its option to purchase Poulos's property was

in 2008 after Poulos conducted an inspection of the property and discovered extensive maintenance and repair issues, including extensive water damage due to roof leaks. Upon entry of the property in 2008, Poulos discovered close to a dozen water buckets scattered throughout the dining room and bar area of the upstairs restaurant. In addition, more than half of the ceiling tiles in the upstairs restaurant had either fallen down or bowed out due to water absorption. Under the terms of the long term (15 year) Lease Agreement Malacos was responsible for all maintenance and repairs. However, after receiving Plaintiff's default letter and opportunity to cure Malacos chose to exercise its option to purchase rather than repair the damage. Poulos answered demanding repair to the building and counter-claimed for eviction. At the time of this exercise to purchase Malacos had affixed to its Notice of Exercise letter an offer to purchase for $1,450,000.00 based on a property appraisal which was also affixed to the Notice.

40.     At the conclusion of the first trial the Court ruled that Malacos was in default of the lease and not entitled to exercise, however the Court found that forfeiture of the lease would have been inequitable and denied Poulos's eviction counter-claim. Subsequently while the first case remained open pending post-judgment motions, Malacos filed the same exact lawsuit seeking specific performance of the purchase option.

41.     Despite attempts by plaintiffs at abating the second identical cause of action while  the first case was pending appeal, the trial court refused and once again the same case was being  tried in the same court, with the same judge. Not surprisingly, Malacos was successful in  the  second suit, despite Malacos's continued defaults under the lease agreement. Judgment for  specific  performance  was  entered  by  the  Court  in  March  2013. [Please see

Final Judgment  attached as Exhibit "F").

42.    During the trial of the second specific performance action, Malacos testified that he had not secured any financing for the purchase. He testified that he hadn't spoken to a bank in years and did not have the requisite funds available to purchase the property.

43.    Subsequent to the Final Judgment of specific performance, the lease agreement expired and Malacos stopped making lease payments. Poulos provided Malacos with the required default notice and the statutory holdover tenant notice. However, despite proper notice Malacos failed to make the lease payments.

44.    In April of 2013, Poulos filed a Complaint for Eviction against Malacos and sought a Writ of Possession. Since the expiration of the Poulos - Malacos Lease Agreement on March 10, 2013, Malacos failed to place any lease payments in the Court's Registry as per Florida Statute.[Please see Transcript Excerpt attached as Exhibit ("H")].

45.    On or about July 2013, Malacos lacked sufficient capital to close the sale as per the court's final judgment. To generate such capital, Malacos along with the other participants decided to unilaterally and fraudulently mortgage the Trust property without the knowledge or consent of Nick and Georgia Poulos and or the Trust beneficiaries.

## THE ENTERPRISE AND PARTICIPANTS

46.     On information and belief, Plaintiffs allege that Defendants and others constitute an associated-in-fact enterprise, through which Defendants participated in, or agreed to participate in, multiple acts of interstate fraud on a federally chartered savings bank by obtaining mortgage loans from Regions Bank  and other lenders based on fraudulent verified loan applications, falsified title documents and data, inflated and/or falsified appraisals, and other false or fraudulent practices for which they are liable (the "Enterprise").

47.     As detailed below, the Enterprise was an association for the purpose of making money from repeated criminal activity and which furnished the vehicle for the commission of two or more predicate acts within the preceding five years of the filing of this Complaint, including fraud against a financial institution (18 U.S.C. §1344); fraud using the U.S. Postal Service (18 U.S.C. §1341); fraud using the U.S. wires (18 U.S.C. §1343); and interstate transportation of money taken by fraud (18 U.S.C. §2314), fraud using the property of another as more fully shown in the representative transactions.

48.     As further detailed below, Defendants operated, managed, and/or directed the affairs of the Enterprise either as 1) business entities which knowingly provided mortgage, escrow, realty, or appraisal services in furtherance of the fraudulent verified loan applications and fraudulent supporting data or documents; 2) business entities which knowingly provided fraudulent data or documents in furtherance of the fraudulent verified loan applications; 3) directors, officers, and/or managers of business entities which knowingly participated in

preparing, submitting, or supporting the fraudulent verified loan applications and fraudulent supporting data or documents; 4) employees and/or agents of business entities which knowingly participated in preparing, submitting, or supporting the fraudulent verified loan applications and fraudulent supporting data or documents; 5) purported borrowers who knowingly participated in preparing, submitting, or supporting the fraudulent verified loan applications and fraudulent supporting data or documents; and/or 6) the principal of those agents which participated in or conducted the affairs of the Enterprise.

## AGENCY

49.     Plaintiffs allege that Christian is the employee/agent of Regions Bank, Inc., such as to create liability upon Regions for the acts of Christian as its agent/employee. All actions taken by Christian in regard to the sale of the Poulos Trust property were within the scope of his authority.

50.     Plaintiffs allege that Robin Sweller, Roland Waller is the employees/agents of Waller & Mitchell, P.A., such as to create liability upon Waller & Mitchell, P.A., for the acts of Roland Waller & Robin Sweller and or Waller & Mitchell, P.A., as its agents/employees. All actions taken by Waller, Sweller and or Waller & Mitchell, P.A., in regard to the sale of the Poulos Trust Properties were within the scope of their authority.

51.     Plaintiffs allege that George Malacos and Michael Malacos are the employees/agents of Malacos Inc, Malacos Holdings, and Gulf Coast Acres II, LLC, such as to

create liability upon Malacos Inc, Malacos Holdings and or Gulf Coast Acres II, LLC for the acts of George Malacos and Michael Malacos as its agents/employees. All actions taken by George and Michael Malacos in regard to the sale and mortgage of the Georgia Poulos Trust property and or the Nick Poulos Irrevocable Trust properties were within the scope of their authority.

52.     Plaintiffs allege that Waller is the employee/agent of Old Republic National Title Insurance Company, such as to create liability upon Old Republic for the acts of Roland Waller as its agent/employee. All actions taken by Waller in regard to the sale and mortgage of the Poulos properties were within the scope of his authority.

## OBJECT OF THE CONSPIRACY

53.     It was part of the conspiracy that on or before January 2011, up to and including the present day, defendants and their co-schemers engaged in a scheme to defraud banks and other investors in mortgages by obtaining mortgage loans by fraudulent means in the names of straw buyers. Defendants fraudulently obtained millions of dollars in mortgage loan proceeds from Mortgage Lenders by submitting false and fraudulent loan applications for the subject fraudulent real estate transactions orchestrated by defendant ROLAND WALLER and others in which individuals appeared at staged real estate closings as the purported/imposter buyers, sellers, and representatives of buyers and sellers to obtain the loan proceeds "paid" to the purported/imposter sellers and their nominees.

54.     It was a further part of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) using straw buyers and others  to

purchase and re-finance commercial properties in Pasco County, Florida; (b) submitting false and fraudulent mortgage loan applications, closing documents and other related loan documents to financial and lending institutions, thereby inducing the financial and lending institutions to make mortgage, construction loans, and business lines of credit to straw buyers recruited by Defendants and the defendants, for the purchase and or re-financing of the commercial properties; (c) submitting false and fraudulent title commitments and related documents to banks and other lending institutions to make loans to Roland Waller, George Malacos and or to one of their corporate nominees and or fictitious trust nominees, causing the financial and lending institutions to loan more money than they otherwise would have loaned by preparing, and submitting to them, false and fraudulent HUD- I Statements which did not accurately reflect the money received from the borrowers and money disbursed to the sellers; (d) concealing the fraudulent  scheme  by executing quit-claim deeds, special warranty and warranty deeds and failing to record, and falsely recording, mortgage deeds and mortgage documentation with the Pasco County Clerk's Office, making mortgage payments, and by arranging to re-sell or "flip," the properties amongst themselves in order to extract additional equity from the properties; and (e) diverting fraud proceeds for their personal use and benefit , and to further the fraud scheme

55.     It was further part of the scheme that defendants Waller, Ellrod, Taylor, Christian, George Malacos, Michael Malacos, and others arranged these fraudulent real estate transactions without the actual owner's knowledge or consent.

56.     Roland Waller, Matthew Ellrod, John Taylor, George Malacos and others identified equity rich properties in Pasco County and the surrounding areas and recruited nominees to participate in the sale and resales of the properties.

57.     The defendants, together with others, prepared fraudulent documents to facilitate the transactions, including fraudulent mortgage applications, fraudulent appraisals, fraudulent title searches which lead to fraudulent title commitments. The defendants used some of the properties securing the loans as first-lien security for other loans, meaning the defendants led lenders to believe that their loans were in the first position in the event of default. To prevent the banks from learning that the conspirators had used many of the properties as security for multiple loans, Waller directed Taylor to make monthly mortgage payments so that the loans would not

become delinquent.

58.     It was further part of the scheme that after these fraudulent real estate transactions closed, defendant Roland Waller and his co-schemers fraudulently obtained the mortgage loan proceeds that were paid to the imposter sellers and their nominees.

59.     It was further part of the scheme that the purported buyers in the fraudulent real estate transactions orchestrated by defendant Roland Waller were told that they would not have to make any mortgage payments or pay any closing fees. In George Malacos's case, he was promised by Waller continued possession of the Poulos property without having to pay rent, a $14,000 a month savings plus he was provided with cash back from the loan proceeds despite the fact that he was technically the buyer of the property. Waller was able to secure Malacos cash back from the loan proceeds via a fraudulent judicial order where he was awarded $222,000.00 dollars in appellate attorney's fees. There was no hearing conducted for the issuance of these fees, it was entered ex parte and recorded with the Pasco County Clerk's Office on July 15, 2014. Upon information and belief, much of the illegally obtained loan proceeds taken in by the Defendants have been laundered via bogus and fraudulent judicial disbursement orders. [Please see December 30, 2013 Disbursement Order marked as Plaintiff's Exhibit ("A")].

60.     In the Plaintiff's case, there have been multiple fraudulent disbursement orders issued by the Circuit Court wherein illegally obtained loan proceeds are washed or laundered through disbursement orders issued by a Pasco County Court. In the Plaintiffs case there was absolutely no basis for the Court to issue a disbursement order of any kind. Upon the entry of a

final judgment for specific performance, the Court's job is done. There was never a receiver appointed by the Court in the Pasco County action, but yet the Poulos property was sold as if there was a receiver appointed to conduct some sort of liquidation of the property or to conduct some sort of estate sale.

61.     It was further part of the scheme that defendant Roland Waller recruited and paid individuals, including defendants George Malacos, Michael Malacos, Matthew Ellrod and others to knowingly pose as buyers, sellers and the purported representatives of buyers and sellers in the fraudulent real estate transactions defendant Roland Waller arranged.

62.     It was  further part of the scheme that defendant George Malacos fraudulently posed at multiple closings for the fraudulent real estate transactions involving the Plaintiffs property as a buyer, seller, or the purported representative of a buyer or seller, using various stolen and false identities, including Greg Henry, Patrick Sullivan, Stephen Matis and Ricky Leone. In furtherance of the scheme to defraud George Malacos as George Michael Malacos rented P.O. Box 6841 in Hudson to receive mail associated with the various frauds he and the other defendants are involved with. Additionally, in furtherance of the scheme to defraud, Mr. Malacos has obtained e-mail addresses using his aliases. For example, using his Greg Henry identity he has secured the following e-mail addresses, greg@innonthegulf.com, mgrspecial@yahoo.com, mrgspcl@cs.com, gmalacos@att.net and towler813@aol.com.

63.     It was further part of the scheme that defendant George Malacos fraudulently posed at a closing for a real estate transaction as a buyer using the identity of another.

64.     It was further part of the scheme that defendants Roland Waller, John Taylor and others knowingly prepared and submitted and caused to be prepared and submitted to Mortgage Lenders, false and fraudulent loan applications and supporting documents in the names and on behalf of purported buyers using stolen and false identities, including false and fraudulent appraisals, and verifications of income, assets and rent.

65.     It was further part of the scheme that defendants Waller, Taylor and others submitted and caused to be submitted to Mortgage Lenders loan applications in connection with the fraudulent real estate transactions arranged by defendant Roland Waller, which defendants Waller, Taylor, Ellrod and Malacos knew contained materially false representations and material omissions, including:

(A)     the true owner of the property;

(B)     the assets and income of the borrower;

(C)     the identity of the true purchaser;
funds;

(D)     fictitious leases;

(E)     back dated deeds;

(F)     that the borrower was not currently involved in litigation;

(G)     that the borrower was receiving rental income from the Hudson Beach Estates property as lesser when in truth and in fact he was a holdover and insolvent tenant;

(H)     that George Malacos was the owner of the trade name "INN ON THE GULF", when in truth in fact Malacos held an expired license to use the trade name for the duration of his leasehold, which expired on March 10, 2013. The Poulos Trust is the rightful owner of the trade name and has been so since 1981.

(I)     that the borrowing entities held good and marketable title of record for the pledged properties and that the properties were free and clear of all liens and encumbrances, when, as defendants Malacos, Waller, Ellrod, Taylor and Christian knew, the borrowing entities did not hold good and marketable title to any of the properties pledged.

(J)     that Mr. Malacos has been domiciled in the State of Florida since the early 80's.

(K)     that George Malacos is the trustee of the George Malacos Revocable Living Trust dated February 1999, when in truth and fact the defendants created and recorded a fictitious trust deed and trustee affidavit which an insider employee at the Clerk's office allowed to be back filed as if the trust deed was originally recorded in 1999.

(K)     that the borrower or the borrower's shell company owned additional commercial property that could be used as collateral for mortgage loans and or BLOCS.

66.     It was further part of the scheme that defendant ROLAND WALLER fraudulently verified income and rent information contained in the fraudulent loan applications submitted to Mortgage Lenders. More specifically, defendants executed mortgage agreements in which defendant Malacos represented that the borrowing entities held good and marketable title of record for the pledged properties and that the borrowing entities received rental income from the

properties.

67.     It was further part of the scheme that defendant TAYLOR, acted as a real estate attorney for fraudulent real estate transactions that he knew defendant ROLAND WALLER had arranged and also acted as a title company closer for some of the fraudulent real estate transactions. [Please See Hearing Transcript Marked as Exhibit ("A")].

## PURPOSE OF THE CONSPIRACY
(Fraudulent Business Loans, Lines of Credit and Constructions Loans)

68.     It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) using straw buyers and others to purchase and finance commercial properties in Pasco County, Florida; (b) submitting false and fraudulent mortgage loan applications, closing documents and other related loan documents to financial and lending institutions, thereby inducing the financial and lending institutions to make mortgage, construction loans, and business lines of credit to straw buyers recruited by Defendants and the defendants, for the purchase and financing of the commercial properties; (c) causing the financial and lending institutions to loan more money than they otherwise would have loaned by preparing, and submitting to them, false and fraudulent HUD- I Statements which did not accurately reflect the money received from the  borrowers  and  money  disbursed  to  the sellers;  (d) concealing  the  fraudulent  scheme  by executing quit-claim deeds, special warranty and warranty deeds and failing to record, and falsely recording, mortgage deeds and mortgage documentation with the Pasco County Clerk's Office, making mortgage payments, and by arranging to re-sell or "flip," the properties amongst themselves in order to extract additional equity from the properties; and (e) diverting fraud proceeds for their personal use and benefit , and to further the fraud scheme.

69.     In the process of effectuating their fraudulent schemes, the Defendants utilized a massive number of forged and or fraudulent conveyances, documents, correspondence, emails, fictitious leases, purchase and sale agreements, promissory notes, corporate filings, mortgage loan documents and property recordings and filings, bank account statements, affidavits, memorandums of trust, quitclaim deeds, warranty deeds, special masters deeds, operating agreements, security interests, notice of commencements, contractor invoices, judicial orders and judgments, tax liens among others all   of which were either false, fraudulent, altered, misrepresented, improperly recorded or not recorded and or contained one or more forged signatures.

70.     The thrust of this case is a multi year mortgage and identity fraud involving multiple players, including attorneys, mortgage brokers & loan originators for Regions Bank, title agents/closing agents, appraisers and straw buyers as well as others. John Taylor, Vince Christian and the Regions Bank co-conspirators were licensed mortgage brokers.

71.     Vince Christian was the branch manager/vice-president at a Regions Bank branch located in Ocala, Florida.

72.     Roland Waller was an attorney and title agent through Old Republic.

73.     In order to obtain loans, co-conspirators would apply to private money lenders and mortgage brokers and or loan originators for loans. Upon information and belief, the loans for which the Defendants applied ranged from $700,000.00 to well over a million dollars and included both primary loans and lines of credit or business lines of credit loans ("BLOCS") as

well as various revolving lines of credit and construction loans.

74.     In order to obtain the loans, co-conspirators Roland Waller and George Malacos would falsely promise to repay the loans.  In order to obtain the loans, the co-conspirators would also execute deeds of trust that they fraudulently represented would secure repayment of the loans. The co-conspirator defendants would further falsely represent that they individually held good title to the properties used to secure the deeds of trust or title was held by one of the Enterprises shell companies or held by one of the conspirator's bogus and fictitious family trusts. In addition, the Enterprise represented to lenders and others that the liens created by the deeds of trust would be superior to any other liens on the properties. In truth and in fact, as the co-conspirators then well knew, not one of the conspirators, nor any of their corporate and or trust nominees held good title to the properties used to secure the deeds of trust. **[Please See Fictitious George Malacos Revocable Living Trust attached as Exhibit ("A")].**

75.     From on or before January 2011 through the filing of Plaintiffs Complaint, multiple fraudulent BLOCS, construction and or business loans were obtained using Plaintiffs properties as collateral without their knowledge or consent. At all times relevant to Plaintiffs complaint, the subject properties were owned by the Plaintiffs and were all unencumbered and some of which were income generating properties. All but one of Plaintiffs Pasco commercial properties were purchased in the 1980s by Nick and Georgia Poulos and subsequently conveyed into the Georgia Poulos Inter Vivos Trust Agreement Dated May 29, 1996 or the Nick Poulos Inter Vivos Trust Agreement and or the Nick Poulos Irrevocable Trust Agreement Dated May 29, 1996. As legitimate real estate investors the subject properties were purchased as long term investments with the goal of owning the properties free and clear of any encumbrances. At no

time have the Plaintiffs refinanced any of the commercial properties and or collateralized the properties in any way.

76.     Upon information and belief, many of these loans were obtained through Vince Christian, at his Regions branch in Ocala, Florida.

77.     During the conspiracy, with Waller's knowledge and approval, HUD-1 statements were prepared at his law firm, Waller & Mitchell, P.A., which falsely stated, among other things: (1) that borrowers supplied their own cash-to-close funds at the closing of the sale transactions for various properties; (2) that Waller & Mitchell, P.A., had sufficient loan proceeds and cash-to-close funds to adequately cover disbursements approved by lenders; and (3) that good faith deposits had been provided by borrowers.

78.     At or near the time of the closings, Waller disbursed the loan proceeds to the purported sellers and others, prior to and without receiving the good faith deposits and cash-to-close payments from the buyers, all contrary to the representations in the HUD-1 statements. In some instances, Waller and Sweller used the loan proceeds to satisfy the buyers' cash-to-close obligations.

79.     The defendants created fake documents used to obtain BLOCs and other loans collateralized by Plaintiffs property or otherwise assisted with procuring the fraud-based loans. Most of the defendants received several thousands of dollars from more than one loan.

80.     Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos,

Vince Christian, and their co-conspirators as well as other coconspirators, identified certain equity rich commercial properties in Pasco County, Florida ("the properties") that could be used to defraud lenders.

81.     Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos, Vince Christian, and their co-conspirators recruited individuals and/or paid others to recruit individuals to fraudulently obtain mortgage, BLOC loans as well as construction loans on the properties, despite the fact that the individuals and or there nominees did not own the properties on which the loans were sought.

82.     Among the individuals recruited to act as unqualified buyers and borrowers were defendants George Malacos, Michael Malacos, Kouromichelakis, Roland Waller and others.

83.     There were additional unidentified coconspirators who were mortgage and BLOC Loan applicants for certain residential properties in Pasco and Hernando Counties. Many of these unidentified coconspirators were the family members of the identified coconspirators, including spouses, siblings, in-laws and others. A review of the Pasco County Clerk's Office documents relating to members of the Enterprise revealed numerous red flags associated with straw buyer transactions. Upon further review and in some instances, Roland Waller, Matthew Ellrod, George Malacos, Michael Malacos, Vince Christian, and their co-conspirators also acted as unqualified buyers and borrowers in order to fraudulently purchase and finance the properties and to obtain the HELOC loans.

84.     Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos, Vince Christian, and their co-conspirators and others prepared or caused to be prepared fraudulent mortgage and HELOC loan applications and other related documents on behalf of the unqualified buyers and borrowers. The loan applications and related documents, which were submitted to the lenders, contained numerous false statements and representations relating to the borrowers' and buyers' employment, income, deposits, assets, liabilities, other loan applications, intent to make the property a primary residence and other information  necessary for lenders to assess their qualifications to borrow money. In some instances, the loan applications and related documents contained numerous false statements and representations relating to the purchase price of the properties.

85.     As part of the loan application process, Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos, Vince Christian, and their co-conspirators created and/or caused to be created false and fraudulent good faith deposits and cash-to-close checks in order to further induce the lenders to approve the mortgage and BLOC loans.

86.     Upon information and belief, Regions insider employees were paid money and other compensation to reward them for processing, submitting and lobbying underwriters and representatives of the lenders to approve fraudulent loan transactions.

87.     Based on the false loan applications and related documents submitted by the defendants, the lenders approved the fraudulent loan requests and provided the unqualified borrowers access to lender funds associated with their loans or sent the loan proceeds to Roland Waller, Esq., and or John Taylor, Esq., for distribution at the closing of the real estate

transactions. Thereafter, the defendants disbursed funds from their fraudulently obtained loans. In total, it is believed that the lenders were induced to fund well over a million dollars in loans.

88.     Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos, Vince Christian, and their co-conspirators made and/or caused to be made payments to the unqualified buyers and borrowers for their roles in fraudulently obtaining the mortgage and other business loans and lines of credit. They also made and caused to be made mortgage payments on the properties in order to conceal the fraudulent nature of the transactions until they sold the properties to other unqualified buyers or the properties fall into foreclosure.

### The Fraudulent Title Documents

82.     It was a further part of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by defrauding the true owners of property located in Pasco County, Florida, as well as banks, mortgage companies, title insurance companies and third-party purchasers, by fraudulently conveying interests in properties through the use of false and fraudulent quit-claim deeds, warranty deeds, special warranty deeds and false and fraudulent mortgage satisfactions. Defendants also induced banks and mortgage companies to make mortgage loans secured by the fraudulently obtained properties and, in some instances, later sold the properties.

83.     It was a further part of the scheme that the defendants filed and caused others to file false and fraudulent court documents, in response to Plaintiffs efforts to regain lawful control of the Hudson Beach Estates Unit 4 property. For example, in response or in defense to the Plaintiffs complaint for eviction of Malacos after their lease had expired, Defendants filed a

fictitious special master's deed and other documents in order to claim that they were now the owners of the property and therefore could not be evicted. [Please See Eviction Documents Attached as Exhibits ("A-D")].

84.     It was a further part of the conspiracy that the Defendants Roland Waller and Matthew Ellrod would create, or get others to create, deeds which purported to transfer ownership interest in the properties to themselves or to nominees.

85.     It was a further part of the conspiracy that the defendant Matthew Ellrod would sign these deeds as if to notarize the signatures of the owners as grantors when, in fact, the owners were not present, and did not sign the deeds. The Defendant Ellrod would sign his name and attest that he saw the owner sign as the :grantor" and that the grantor "personally appeared before me in said County, the said being personally well known to me as the person who executed the said deed and acknowledged the same to be his/her act and deed.

86.     It was further part of the conspiracy that the defendant Matthew Ellrod and or Roland Waller at times used forged signatures and names of other Notaries on fraudulent deeds.

87.     It was a further part of the conspiracy that the conspirators used the names of Fictitious Title companies on many of the bogus title documents they created and recorded with the Pasco County Clerk's Office. Often times, the fake business names utilized by the conspiracy were variations of names to existing and legitimate title companies. For example, the conspirators utilized a variation of the business name of a legitimate title company "Southern Security Title Services, Inc" which is located at 7601 N. Florida Ave, Citrus Springs, FL 34424

on many of their fictitious documents. The conspirators executed and recorded fictitious title documents using a fake and non-existent title company purportedly named "Southern Security Title," and listed its address as 11035 Spring Hill Dr., Spring Hill, Florida. [Please see Exhibits ("A-D")]. Another non-existent title company used by the conspiracy was Liberty Title Company. [Please See Exhibits ("A-E").

88.     It was a further part of the conspiracy that for the property in the Middle District of Florida, Roland Waller and or Matthew Ellrod caused the forged and fraudulent deeds to be filed with the Pasco County Clerk's Office, and by listing an address in the State of Florida, at which to receive mail, caused the Pasco County Clerk's Office to send via the Poastal Service the recorded, file-stamped, forged deeds to him.

89.     From on or before January 2011, and continuing to present day, in the Middle District of Florida and elsewhere, the defendants Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos, Vince Christian, Lynn Gilbert, and others did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with each other to commit offenses against the Plaintiffs by making, uttering, and possessing forged and or falsified deeds with the intent to deceives another person, organization, or government, in violation of 18 U.S.C. 513 and 2.

90.     Waller and his co-conspirators employed various manners and means in furtherance of the conspiracy and scheme to defraud, including but not limited to the following;

91.     Defendants were able to obtain approval for the fraudulent loans based in part on

the following:

(a)     Regions conducted minimal title searches to verify ownership of the property that each coconspirator was using for their loan, basically relying on the documents submitted by the borrower for the loan or Regions and other lenders conducted quick on-line searches of the Pasco County Land Records via the Pasco County Clerk's Office website.

(b)     Christian as a Regions insider was "on the take" from Roland Waller and John Taylor. Christian received payments for many of the loans that went through towards the end of the fraud which is when most of the loans were approved. Christian personally lobbied underwriters to approve the many loans.

92.     Upon information and belief and after reviewing documents on file with the Pasco County Clerk's Office, it is Plaintiffs belief that the conspiracy is supported by various "insider" employees within the Pasco County Clerk's Office.

93.     Plaintiffs have discovered hundreds of false, fraudulent and forged documents filed and recorded with the Pasco County Clerk's Office, including the following:

**Fraudulent Certificate of Title**

(A)     Defendants created and recorded a back dated Certificate of Title purportedly issued in 1977 which places title to Plaintiff's Hudson Beach Estates Unit 4 property in the name of Frank Alderman and Virginia Alderman, when in truth and fact the property was owned by Ruth and James Lynch and there company The Amber Lantern Inc., in

1977. Nick and Georgifa Poulos purchased the property from the Lynch's in 1980. [Please See Plaintiff's Exhibit ("A")].

**Fictitious Judgment of Foreclosure**

(B)    Defendants created and recorded a back dated and fictitious Judgment of Foreclosure which orders the Hudson Beach Estates Unit 4 property to be sold on the Courthouse steps in Moon Lake on December 4, 1980. Plaintiffs purchased that property on December 11, 1980. [Please See Plaintiff's Exhibit ("A")].

**Fictitious Warranty Deed**

(C)    Defendants created and recorded a back dated and fictitious Warranty Deed from Frank Alderman and Virginia Alderman to Armand Milazzo and Adeline Milazzo dated July 1, 1986. [Please See Plaintiffs Exhibit ("A")].

**Fictitious Notice of Lis Pendens**

(D)    Defendants created and recorded a fictitious Notice of Lis Pendens referencing a an action to foreclose an Agreement for Deed and which describes Plaintiffs Hudson Beach Estated Unit 4. The property description reads "All upland lying South of Lee Way between Lot Fifteen (15) and Lot Seventeen (17) of Block C, Hudson Beach Estates, Unit 4 as recorded in Plat Book 7  at pages 31 and 32 of the Public records of Pasco County, Florida. [Please See Plaintiff's Exhibit ("A")]. Plaintiffs property is situated on Lot 16.

**Fake and Fictitious Judicial Order**

(E)    Defendants created a fake and false judicial order dissolving the Amber Lantern, Inc, (Plaintiffs predesesor's corporation and holder of the Poulos Mortgage and Note to the subject property) pursuant to a fake Order Granting Petition for Appointment of

Successor Trustee of Dissolved Corporation dated November 15, 1996 in Case No. 96004859 in the Sixth  Judicial Circuit in and for Pasco County, Florida, in order to nullify the Plaintiffs Satisfaction of Mortgage issued in April of 1998; [Please See Exhibit ("A")].

**Bogus Probate Court Orders and Letters of Administration**

(F)     Defendants created and recorded bogus probate court orders and Letters of Administration. The bogus Letters of Administration order was signed by Judge W. Lowell Bray, Jr., on July 7, 1995 and appointed Albert C. Kreischer, Esq., to serve as the personal representative of the Ruth M. Lynch Estate. In truth and fact, Ms. Lynch's Estate was not probated and there was no liquidation of The Amber Lantern Inc as Defendants have attempted to orchestrate. In addition to serving as Ms. Lynch's counsel, Mr. Kreischer was also her nephew. Mr. Kreischer conducted the closing for the Sale of the Hudson Beach Estates Unit 4 property from Ms. Lynch to Nick and Georgia Poulos. After her death, Mr. Kreischer and his two sisters were assigned the Mortgage that was given to Ms. Lynch by Nick and Georgia Poulos. [Please See Assignment Marked as Plaintiffs Exhibit ("A")]. Shortly thereafter on April 14, 1998, Plaintiffs delivered a check to Mr. Kreischer's office, satisfying the Mortgage. [Please See Satisfaction Marked as Plaintiff's Exhibit ("A")]. The Defendants recorded a bogus Assignment of Mortgage dated December 9, 1996. [Please See Plaintiff's Exhibit ("A").

**Fraudulent Deeds;**

(G)     defendants have created and recorded multiple deeds purporting to transfer the Hudson Beach Estates Unit 4 property to various individuals, corporations and general partnerships, such as Hudson Investors, L.P., Hudson Horizons Corporations and others. [Please See Plaintiffs Exhibits ("A-F").

(H)     defendants created and recorded fraudulent promissory notes purportedly collaterialized by Plaintiffs property using fictitious identities and bogus partnerships such as Hudson Investors, L.P.  . [Please See Plaintiffs Exhibits ("A-F").

(I)     defendants created and recorded a fraudulent and bogus State of Florida Board of Trustees of the Internal Improvement Trust Fund adding Armand Milazzo as an owner of Plaintiffs property.

(J)     defendants made material alteration to previously recorded title documents recorded with the Pasco County Clerk's Office. More specifically, in furtherance of the defendants scheme to create the appearance of Tenants in Common ownership of the Hudson Beach Estates Unit 4 property, between Nick Poulos and Armand Milazzo, defendants altered a deed on a different piece of property that Nick Poulos and Armand Milazzo purchased together in 1986 by adding the property address of the Hudson Beach Estates Unit 4 property directly under the names of Nick Poulos and Armand Milazzo. By doing so Defendants sought to create the appearance of a partnership and or a TIC partnership between Nick Poulos and Armand Milazzo. Ultimately, the end goal for the Defendants is to effectuate a partition of the Plaintiffs Hudson Beach Estates Unit 4 property which in 2011 was appraised at 2.9 million and which up until the defendants Regions liens had remained unencumbered since 1998. In addition, the defendants in furtherance of their scheme have made material alterations to existing documents in the

Pasco Land Records, by adding Plaintiff Nick Poulos's name to dozens of mortgage loan documents, security agreements, deeds of trust, and various renewals and extentions of loans, when in truth and fact Mr. Poulos never obtained or joined with Mr. Milazzo in obtaining any of the loans his name has been added to. Mr. Poulos and Armand did on two occassions purchase some property together, however it was never done as a form of partnership, but rather a friend having a first dibs on some good property that can be closed quickly as a cash deal. In fact, the properties purchased by Mr. Poulos and Mr. Milazzo were cash deals and there was no lender involved. All of the documents contained in Plaintiffs Barnett Bank Documents Exhibit are fictitious and fraudulent and any signature of Mr. Poulos is a forgery. As many of the documents are list Barnett Bank, Plaintiffs have listed the Exhibits relevant to this subject as the "Barnett Bank Exhibits." [Please see Pls. Exs., marked as the Barnett Bank Exhibits.]

(k)     Defendants created and recorded false, fictitious and or forged Declarations of Domicile on behalf of straw buyers, such as Maria L. Periu, who is also Defendant George Malacos's Fiancee and the Mother to one of his sons. Ms. Periu had two Declarations recorded in the Official Records wherein she claims to have been a resident of the State of Florida since 1997fgand also various victims of the Defendants identity thefts, including two Declarations of Domicile created and recorded by the Clerk's Office by Straw Buyer. Additionally, Plaintiffs discovered a false, fraudulent and forged Declaration of Domicile purportedly executed by Plaintiff Nick Poulos in 1997 with his forged signature affixed. Mr. Poulos has been a property owner and voter in Florida since 1980.

**Fictitious Court Cases Created by the Pasco County Clerk's Office**

97.     Plaintiff has recently discovered multiple fictitious court cases docketed against

Plaintiff Nick Poulos. [Please See Exhibit ("A")].

98.     Upon information and belief, an "insider" employee of the Pasco County Clerk's

Office with access to the Clerk's On-Line Docket created fictitious court cases in furtherance of

Defendants scheme to create the appearance that Nick Poulos held an ownership interest in the

subject party as Nick Poulos d/b/a INN ON THE GULF, a Florida general partnership and not as

Co-Trustee of the Georgia Poulos Inter Vivos Trust Agreement. Moreover, upon information and

belief, the Defendants as part of their scheme to defraud created a fraudulent title commitment

for the issuance of an Owners Policy to George Malacos, d/b/a INN ON THE GULF. This was

done to match the fraudulent court cases that have been created by the Clerk's Office on behalf of

the Defendant George Malacos listing INN ON THE GULF as a party. The Bogus Court Cases

created by the Clerk's Office are listed as the following on the Clerk's On-line Docket:

    **(a)**    J vs. Poulos; Case # 51-1984-CC-000460-CCAX-WS; Section O
            Filing Type:  Monies Due
            Filing Date:   8/30/1984
            Status Date:  2/26/1987

99.     The "Insider" Clerk responsible for entering this garbage went so far as to list an

attorney by the name of Michele Russell, Esq. as counsel for Mr. Poulos. A check of the Florida

Bar's website shows the only Michele Russell practicing law in Florida, is doing it Palm Beach

County. In furtherance of the Defendants scheme to defraud, the "insider" Clerk entered three

separate Defendant parties, (1) INN ON THE GULF, (2) INN ON THE GULF D/B/A,  and (3)

NICK POULOS, all done with the intent to create the appearance that INN ON THE GULF is a

Corporation when in truth and fact it is nothing more than a Tradename created by the Plaintiffs in 1981. AA & B, Inc., is the Plaintiffs true corporation, however in 1996 AA & B, Inc was incorporated into the Georgia Poulos Inter Vivos Trust Agreement. [Please see plaintiffs shareholder certificates marked as exhibit ("B")].

     (b)     N Poulos v. J Sweet

               51-2003-CA-002548-CAAX-WS

               Section G

               Injunction

               Closed

               Filing Date 8/29/2003

               Status Date 6/23/2008

100.    In this fictitious action created by the Pasco County Clerk's Office, Nick Poulos is now purportedly seeking some sort of injunction against two defendants, Ken Jahrling and Joseph Sweet. At no time has Plaintiff Nick Poulos ever sought an injunction in any type of legal proceeding and in any type of capacity. All of the information entered by the Clerk's Office portraying Mr. Poulos as a litigant seeking an injunction from the Court is false and defamatory per se. Mr. Poulos has been an upstanding business man in the community that he and his way adore since 1980. At their businesses peak Plaintiffs Nick and Georgia Poulos employed forty nine (49) employees at a time when the County was half the size of today's Pasco. Throughout the close to twenty years of operation they were remained virtually litigation free, outside of a couple of small claims action brought against them, which were dismissed. But yet the Pasco County Clerk's Office in facilitating the Defendant Malacos and Waller's Bank Fraud has sought to portray Mr. Poulos in false light.

    III.    **<u>False and Fraudulent Clerk Entries</u>**

101.    Upon information and belief, in furtherance of the Defendants conspiracy to defraud, the Pasco County Clerk's office has falsely entered information on its online website with the intent to misrepresent the true ownership of property in Pasco County. Unlike the majority of County Clerk's Offices throughout the State of Florida which utilize software that displays the requested document simultaneously with the property's data, the Pasco County Clerk's website requires the user click through three data screens prior to revealing the requested document. Upon information and belief,  the "insider' Clerk employee(s) have entered false information on the three data screens prior to the document display and or misrepresented the ownership of property, misrepresented a property to be encumbered by a mortgage lien, entered false property descriptions into the public record.


101.    An example of the Clerk's fraudulent entries into the Public Record is the intentional re-filing of Adeline Milazzo's death certificate from its true and correct February 1989 placement in the County's Official records to the re-filed fraudulent placement of February 1998. As mentioned earlier in Plaintiffs complaint, Adeline Milazzo was the wife of Armand Milazzo and a close family friend of the Poulos family. Her and her husband arrived in Florida from Rhode Island to enjoy their retirement around the same time as the Poulos family arrived from Texas. Unfortunately, Ms. Milazzo left us way too early after losing her battle with Cancer in 1989. To the undersigned attorney's utter dismay and disgust, while researching the County's land records, I discovered her Death Certificate filed in 1998 rather than its correct space on February of 1989. In addition, the Defendants and the "insider" Clerk employee(s) actually altered Mrs. Milazzo's Death Certificate by placing her husband's 1998 home address on the Certificate as opposed to home they shared at the time of her passing.

**Fake Judicial Orders Created and Recorded**

(f)     defendants created a fake and false judicial order dissolving the Amber Lantern, Inc, (the previous owner's corporation and holder of the Poulos Mortgage and Note to the subject property) pursuant to a fake Order Granting Petition for Appointment of Successor Trustee of Dissolved Corporation dated November 15, 1996 in Case No. 96004859 in the Sixth  Judicial Circuit in and for Pasco County, Florida, in order to nullify the Plaintiffs Satisfaction of Mortgage issued in April of 1998; Defendants;

97.     Roland Waller agreed and conspired with others including, but not limited to, Matthew Ellrod, John Taylor, Robin Sweller, Lynn Gilbert, George Malacos, Michael Malacos, Vince Christian and others known and unknown to commit bank fraud.

## CONSPIRACY TO COMMIT BANK FRAUD
### (18 U.S.C.  1349)

### PURPOSE OF THE CONSPIRACY

102.     It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) using unqualified borrowers who did not own residential properties to obtain BLOC loans; (b) using unqualified buyers and borrowers to purchase and finance residential and commercial properties in Pasco County, Florida and other counties; (c) submitting false and fraudulent mortgage loan applications, closing documents, HUD- I Statements, deeds, income tax returns, wage and earnings statements, and other  related loan documents to financial and lending institutions, thereby inducing the financial and lending institutions to make mortgage and BLOC loans to unqualified buyers  and borrowers for the

properties; (d) causing the financial and lending institutions to loan money that they otherwise would not have loaned by preparing, and submitting to them, false and fraudulent loan documents, such as HUD- I Statements that did not accurately reflect the money disbursed and the source of funds to the buyers and sellers; (e) concealing the fraudulent scheme by failing to record, and falsely recording, deeds and mortgage documentation with the State of Florida; and (f) diverting fraud proceeds for their personal use and benefit, and to further the fraud scheme.

## MANNER AND MEANS OF CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

103.    Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos, Vince Christian, as well as other co-conspirators, identified certain equity rich properties in Pasco County, Florida ("the Properties") that could be used to defraud lenders.

104.    Roland Waller, Matthew Ellrod, John Taylor, George Malacos, Michael Malacos, Vince Christian recruited individuals, and paid others to recruit individuals, to fraudulently obtain mortgage and BLOC loans, when the individuals did not own the properties on which the mortgage loans and lines of credit were sought. Among the individuals recruited to act as unqualified buyers and borrowers were defendants and co-conspirators, George Malacos & Michael Malacos. In some instances, Roland Waller also acted as unqualified buyers and borrowers in order to fraudulently purchase and finance the Properties, and to obtain fraudulent BLOC loans.

105.    It was a further part of the conspiracy that the Defendants, Roland Waller, John Taylor and Vince Christian, secured financing for these loans and for other real estate transactions by submitting and causing the submission of loan applications to lenders, including

federally insured financial institutions, on behalf of borrowers that contained misrepresentations related to the borrower's Financial condition, including but not limited to their income and assets.

106.   It was a further part of the conspiracy that the Defendant Roland Waller, with the assistance of other members of the conspiracy, submitted false documents in connection with the loan applications, including but not limited to the following:

(A)   appraisals that misrepresented the true value of the properties and most importantly appraisals that misrepresented who the true owner of the property was. Defendants utilized appraisals for much more than establishing value. In addition to misrepresenting the ownership of the properties, Defendants also utilized fraudulent appraisals to   misrepresent the property description associated with a particular parcel.

107.   Upon  information and belief, part of the Defendants scheme to defraud is to falsely and fraudulently move to partition property interests fraudulently acquired. More specifically, after a suitable equity rich residential or commercial property is discovered by the defendants, loans are applied for using the equity rich properties as collateral, various false and fraudulent documents are recorded with the Clerk's Office depending on the history of the property and its owners which after recordation with the Clerk's Office creates an  interest  in  the property with the Defendants, a partition action is initiated wherein the      property  is  sold  and the Defendants recently acquired loan is paid off from the   proceeds plus attorneys fees;

(B)   Fraudulent and fictitious rent rolls that overstated the rental income earned at the properties, copies of leases, and other rental documents for the pledged properties;

(C)   invoices falsely representing that improvements had been made on the

Properties,

    (D)    fictitious leases;

    (E)    fictitious bank statements and other documents used to verify the borrower's assets;

    (F)    fictitious tax documents and other documents used to verify the borrower's incomes;

    (G)    back-dated deeds; and

    (H)    personal financial statements that overstated the borrower's income and net worth.

    (I)    Fictitious Promissory Notes and bogus Deeds of Trust back dated to 2010 and purportedly collateralized by the Plaintiffs property and used in order to obtain refinancing from lenders to pay off the purported debt and to extract additional equity from the Poulos Trust Properties.

108.    It was further a part of the conspiracy that Defendants Waller, Sweller, and Taylor caused fraudulent form HUD-1's to be prepared and submitted to the lending institutions that inaccurately represented how funds were to be paid and distributed at the closing, including but not limited to:

(a)  representing that the borrowers had made down payments in connection with the closings when, in fact, the borrowers had not made down payments associated with the closings; and

(b)  representing that proceeds of new loans were being used to repay prior loans when,

in fact, the properties were unencumbered;

(c) representing that proceeds of new loans were being used to repay construction invoices. More specifically, defendants recorded a fictitious Contractor's Lien with the Bay County, Florida Clerk's Office. Shortly after Nick and Georgia Poulos retired, Nick Poulos became restless and decided to get back into the Restaurant business. Mr. Poulos was very fond of the beaches in north Florida and had purchased a small piece of commercial property in 1996 in Walton County, Florida and thus decided to build a restaurant in Panama City Beach, Florida. In 2000, Plaintiffs completed construction of the Restaurant and opened for business. Plaintiffs sold the building and property in 2003. However, in furtherance of the Defendants scheme to defraud, Plaintiffs recently discovered a Construction Lien recorded under the name of Plaintiff Nick Poulos, recorded with the Bay County Clerk of Courts. The lien was recorded as if it was filed on April 28, 2011. The Lien was executed by a Ryan Williams, Vice-President of Coastal Plumbing of Bay County, Inc., P.O. Box 1241, Lynn Haven, Florida 32444. The bogus Claim of Lien is for labor, services or material consisting of Plumbing for New Restaurant located at 9802 Front Beach Rd, Panama City Beach, FL 32413 in the amount of $81,287.29. [Please See Exhibit ("A")].

d.    The bogus lien also falsely states Nick Poulos's address as 107 Windward Ct, Panama City Beach, Florida. This address is the address of a home that was owned by Mr. Poulos's son Anastasios Poulos, which was sold in 2003. Therefore, it is believed that this bogus lien was recorded to extract additional proceeds from loans and also as part of Defendants title theft by placing Mr. Poulos in North Florida as opposed to Pasco County.

109.   It was further a part of the conspiracy that the defendants Waller, Sweller and Taylor submitted and caused the submission of, with the assistance of other members of the

conspiracy, loan applications on behalf of individuals in connection with the purchase of properties and the re-financing of loans collateralized by properties that, as they then well knew, were false in that they overstated the incomes or assets of the borrowers. [1]

110.    Based on the false and fraudulent loan applications and related documents submitted by the defendants, the lenders approved the fraudulent loan requests submitted by the defendants and provided the unqualified borrowers access to the BLOC funds associated with their loans or sent the loan proceeds to Roland Waller in Pasco County, Florida for distribution at the closing of the real estate transactions. Thereafter, the defendants disbursed funds from their fraudulently obtained BLOC loans.

111.    Upon information and belief, the defendants fraudulently induced the lenders to fund million in illegal loans.

112.    As part of the closing procedure, Roland Waller and Robin Sweller prepared, and caused to be prepared, and submitted to lenders false and fraudulent HUD-1 Statements which falsely stated, among other things, that borrowers supplied their own cash-to-close funds at the closing of the sale transactions for various properties; that she had sufficient loan proceeds and cash-to-close funds to adequately cover the disbursements approved by the lender; and that good faith deposits had been provided by borrowers.

---

[1] Despite being listed on the August 12, 2013 HUD-1 Settlement Statement as the loan originator, it was communicated by his counsel at a hearing this past October that Mr. Taylor was in fact the closing agent for the August 201;3 loan transaction between Malacos and Regions Bank. According to the HUD-1 Settlement Statement submitted to the Court in Case Number: 2011, Roland Waller is listed as the closing agent and it is Robin Sweller's signature on the HUD-1 Settlement Statement. [Please see copy of transcript from October 30, 2014 hearing attached as Exhibit ("A")].

113.    At or near the time of the closings, ROLAND WALLER and his co-conspirators fraudulently disbursed the loan proceeds to the imposter sellers and others, prior to and without receiving the good faith deposits and cash-to-close payment from the buyers, contrary to the representations in the HUD-1 Statements. In some instances, WALLER used the loan proceeds to satisfy the buyers' cash-to-close obligations.

114.    At or near the time of time of the closings, ROLAND WALLER and his co-conspirators caused fraudulent payments and disbursements to be made from the mortgage loan and BLOC proceeds, and also fraudulently diverted loan proceeds from the sales transactions for their own personal benefit and to further the fraud scheme.

## COUNT ONE

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### 18 U.S.C. § 1962(c) (All Defendants)

115.    Plaintiff realleges and restates paragraphs 1 through 114.

116.    At all relevant times, Defendants constituted an "enterprise" in that Defendants are composed of individuals [18 U.S.C. §§ 1961(3) and 1962(c)] who associated with and/or participated in the conduct of said enterprise's affairs, and corporate entities [18 U.S.C. §§ 1961(4) and 1962(c)]. All Defendants conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). Defendants' pattern of racketeering activity consisted of:

(i)    a scheme to defraud that was knowingly and intentionally devised by Defendants Waller, Ellrod and Malacos, act and others, to obtain money or property by means of false or fraudulent pretenses, representations, or promises; and, for the purpose of executing such scheme,

Defendants placed or foreseeable caused to be placed in a post office, or authorized depository for mail, matter that furthered the scheme to defraud and thus committed mail fraud, in violation of 18 U.S.C § 1341, each time they used or foreseeable caused the mails to be used to distribute the materials related to the scheme.

(ii)    knowingly executing, or attempting to execute, a scheme or artifice to obtain money under the custody or control of a financial institution by means of false or fraudulent pretenses or representations (including but not limited to the fraudulent contracts with straw purchasers which would have been relied upon by financial institutions and real estate appraisers working for said financial institutions to establish market value), in violation of 18 U.S.C. § 1344;

(v)     traveling in interstate and foreign commerce or using the mail or any facility in interstate or foreign commerce with intent to distribute the proceeds of the fraudulent scheme or otherwise promote, manage, establish, or carry on a scheme to defraud and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. §§ 1341, 1343 & 1344.

117.    These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

118.    In the alternative, at all relevant times, some or all of the following individuals constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they were "a group of individuals associated in fact":

(a)     Defendants Roland Waller, John Taylor, Matthew Ellrod, George Malacos, personally and the Malacos related entities; Regions Bank, Inc., Old Republic National Title Insurance Company; Urban Realty Solutions and Lynn Gilbert, and others are individual "persons, within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b)     Between the summer of 2004 and the present, Defendants conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). Defendants' pattern of racketeering activity consisted of:

(c)     A fraudulent scheme that was designed to extract direct or indirect personal rewards from

Plaintiff. See, 18 U.S.C. §§ 1341 & 1343;

(ii)     Defendants knowingly drafted and used fraudulent contracts, or attempted to do so, and/or engaged in misleading conduct toward and made misrepresentations to, and failed to disclose materials facts to Plaintiff, with intent to (i) cause Plaintiff to believe that open market forces were causing the value in the Poulos Trust Property condominium units to increase; and/or (ii) to create a fraudulent continuity of documents that would trick financial institutions into loaning money to Defendant Malacos and to Plaintiff based on the inflated and fraudulent values created through Defendants bad acts; Defendants committed such acts in violation of 18 U.S.C. §§1341 & 1343;

(iii)     a scheme to defraud that was knowingly and intentionally devised by Defendants Waller and Taylor to obtain Plaintiff' money or property by means of false or fraudulent pretenses, representations, promises, and non-disclosures of material facts; and, for the purpose of executing such scheme, Defendants placed or foreseeable caused to be placed in a post office, or authorized depository for mail, matter that furthered the scheme to defraud; Defendants committed mail and wire fraud, in violation of 18 U.S.C §1341, each time they used or foreseeable caused the mails or wires to be used to distribute the materials described herein.

(iv) knowingly executing, or attempting to execute, a scheme or artifice to obtain money under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, and material non-disclosures in violation of 18 U.S.C. § 1344;

(v) traveling in interstate and foreign commerce or using the mail or any facility in interstate or foreign commerce with intent to distribute the proceeds of the fraudulent scheme or otherwise promote, manage, establish, or carry on a scheme to defraud and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. §§1341, 1343 & 1344.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

119.    In the alternative, at all relevant times, some or all of the following individuals

constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they were "al

group of individuals associated in fact": Defendants Roland Waller, John Taylor, Matthew Ell rod,

George Malacos, personally and the Malacos related entities; Regions Bank, Inc., Old Republic National

Title Insurance Company; Urban Realty Solutions and Lynn Gilbert, jointly and severally,

(a) Defendants are individual "persons," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who    associated with and/or participated in the conduct of said enterprise's affairs.

(b)    Between January 2011 and December 2014 Defendants conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). Defendants' pattern of racketeering activity consisted of:

(i) A fraudulent scheme that was designed to extract direct or indirect personal rewards from Plaintiff. See,    18 U.S.C. §§ 1341 & 1343;

(ii) Defendants knowingly drafted and used fraudulent contracts, or attempted to do so, and/or engaged in misleading conduct toward and made misrepresentations to, and failed to disclose materials facts to Plaintiff, with intent to (i) cause Plaintiff to believe that open market forces were causing the value in the Poulos property to increase; and/or (ii) to create a fraudulent continuity of documents that would cause financial institutions to loan money to Malacos and Plaintiff based on the inflated and fraudulent values created through Defendants bad acts; Defendants committed such acts in violation of 18 U.S.C. §§1341 & 1343;

(iii)A scheme to defraud that was knowingly and intentionally devised by Defendants Waller and

Taylor to obtain Plaintiffs money or property by means of false or fraudulent pretenses,

representations, promises, and non-disclosures of material facts; and, for the purpose of executing

such scheme, Defendants placed or foresee ably caused to be placed in a post office, or authorized

depository for mail, matter that furthered the scheme to defraud; Defendants committed mail and

wire fraud, in violation of 18 U.S. §1341, each time they used or foresee ably caused the mails or

wires to be used to distribute the materials described herein.

(iv) knowingly executing, or attempting to execute, a scheme or artifice to obtain money under

the custody or control of a financial institution by means of false or fraudulent pretenses,

representations, and material non-disclosures in violation of 18 U.S.C. § 1344;

(v) traveling in interstate and foreign commerce or using the mail or any facility in interstate or foreign commerce with intent to distribute the proceeds of the fraudulent scheme or otherwise promote, manage, establish, or carry on a scheme to defraud and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. §§1341, 1343 & 1344.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

120.    At all relevant times, the enterprises were engaged in, and their activities affected, interstate commerce and foreign commerce.

121.    All of the predicate acts described were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud Plaintiff; their common result was to defraud Plaintiff of money; Defendants, each personally or through their agents or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiff was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

122.    All of the predicate acts were continuous so as to form a pattern of racketeering activity in that:

> a) Defendants engaged in the predicate acts over a substantial period of time and, upon information and belief, and perpetrated the predicate acts successfully against others similarly situated to Plaintiff; or

> b) The patterns of racketeering activity engaged in by Defendants continues or threatens to continue because such conduct has become a regular way of conducting Defendants' on-going business activities.

123.    As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in violation of 18 U.S.C. §§ 1962(c), Plaintiff has been injured in its business or property,

within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiff has suffered damages in excess of $500,000.00 paid by Plaintiff to Defendants. Plaintiff is, therefore, entitled to recover threefold the damage it has sustained together with the cost of the suit, including reasonable attorneys' and experts' fees.

**WHEREFORE**, Plaintiff demands trial by jury and judgment from the Court as follows:

A.      To award damages against Defendants Roland Waller, John Taylor, Matthew Ellrod, George Malacos, personally and the Malacos related entities; Regions Bank, Inc., Old Republic National Title Insurance Company; Urban Realty Solutions and Lynn Gilbert, jointly and severally, for a sum of money equal to the amount of damages and/or losse Plaintiff have sustained or will sustain;

B.       To treble the amount of said damages pursuant to 18 U.S.C. § 1964(c);

C.      To enjoin Defendants' deceptive practices;

D.      To award prejudgment interest on the amount of damages and/or losses that Plaintiff has sustained;

E.      To award all costs of litigation incurred by Plaintiff, including its reasonable attorns' fees and experts' fees, pursuant to 18 U.S.C. § 1964(c) and Florida law; and

F.      To award such other and further relief as the Court deems just and equitable.

**COUNT TWO**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

**18 U.S.C. § 1962(d)**
**(Conspiracy All Defendants)**

124.    Plaintiff realleges and restates paragraphs 1 through 124.

125.    In the alternative to Count One, Defendants conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). In particular, Defendants intended to further the fraudulent scheme which, if completed, would satisfy all of the elements of a substantive RICO criminal offense and adopted the goal of furthering or facilitating the criminal

endeavor.

126.    Plaintiff was injured by Defendants' overt acts that are acts of racketeering or otherwise unlawful under the RICO statute:

(a) a scheme to defraud that was knowingly and intentionally devised by Waller and Taylor, and furthered by the other Defendants, to obtain Plaintiff's money or property by means of false or fraudulent pretenses, representations, or promises, and material non-disclosures; and, for the purpose of executing such scheme, Defendants placed or foresee ably caused to be placed in a post office, or authorized depository for mail, or put upon the wires, matter that furthered the scheme to defraud; Defendants committed mail and wire fraud, in violation of 18 U.S.C § 1341 & 1343, each time they used or foresee ably caused the mails and wires to be used to distribute the materials described herein.

b) knowingly executing, or attempting to execute, a scheme or artifice to obtain money under the custody or control of a financial institution by means of false or fraudulent pretenses or representations, in violation of 18 U.S.C. § 1344;

c) traveling in interstate and foreign commerce or using the mails and wires or any facility in interstate or foreign commerce with intent to distribute the proceeds of the fraudulent scheme or otherwise promote, manage, establish, or carry on a scheme to defraud and thereafter performed or attempted to perform said acts, in violation of 18 U.S.C. §§ 1341, 1343 & 1344.

127.    As a proximate result of, in violation of 18 U.S.C. §§ 1962(d), Plaintiff has been injured in its business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiff has suffered damages to the extent of its payment of escrow moneys, down payments, interest, fees, and expenses, all in excess of $500,000.00. Plaintiff is, therefore, entitled to recover threefold the damage they have sustained together with the costs of the suit, including reasonable attorneys and experts' fees.

**WHEREFORE,** Plaintiff demands trial by jury and judgment from the Court as follows:

A.    To award damages against Defendants Roland Waller, John Taylor, Matthew

Ellrod, George Malacos, personally and the Malacos related entities; Regions Bank, Inc., Old Republic National Title Insurance Company; Urban Realty Solutions and Lynn Gilbert, jointly and severally, for a sum of money equal to the amount of damages and/or lose Plaintiff have sustained or will sustain;

B.      To treble the amount of said damages pursuant to 18 U.S.C. § 1964(c);

C.      To enjoin Defendants' deceptive practices;

D.      To award prejudgment interest on the amount of damages and/or losses that Plaintiff has sustained;

E.      To award all costs of litigation incurred by Plaintiff, including its reasonable attorneys' fees and experts' fees, pursuant to 18 U.S.C. § 1964(c) and Florida law; and

F.      To award such other and further relief as the Court deems just and equitable

Respectfully submitted,

POULOS LAW FIRM

By: /s/Antonios Poulos
    Antonios Poulos
    Florida Bar No. 0039669
    1502 W. Busch Blvd, Suite 200
    Tampa, Florida  33612
    Tel. (813) 374-2061
    Fax (813) 902-7042
    E-Mail: tony@pouloslawtampa.com
    Plaintiffs Counsel